Cyrus Sullivan
PO Box 86653
Portland, OR  97286

United States District Court

Central District of California

Eastern Division        CV18-01029

VAP (SHKx)

Cyrus Andrew Sullivan

V.

Five Bureau of Prisons Guards        Complaint: Excessive Force. 8th Amendment Violation

I the plaintiff, Cyrus Andrew Sullivan, by and through myself pro se, do hereby submit

this complaint against five employees of the Federal Bureau of Prisons ("BOP") known to me as

Lieutenant S. Williams, Senior Officer Specialist ("S.O.S.") S. Luna, S.O.S. N. Pedraza, Senior

Officer A. Olmos and Senior Officer T. Oeltjenbruns, who were employed as correctional

officers at the United States Penitentiary in Victorville, California ("USP Victorville") on July 29,

2015.  This complaint is being brought under Bivens v. Six Unknown Named Agents of the

Federal Bureau of Narcotics, 403 U.S. 388 (1971) for cruel and unusual punishment in violation

of the 8th Amendment involving assault, battery, torture, and excessive force.

JURISDICTION

"Bivens is a judicially created cause of action against federal officers arising under the

United States Constitution." Ting v. United States, 927 F. 2d 1504 (9th Cir. 1991). See also

Carlson v. Green, 446 US 14 (1980) "a violation of the Eighth Amendment proscription against

cruel and unusual punishment giving rise to a cause of action under Bivens. . .in which it had

been established that in some circumstances the victims of a violation of the Federal

Constitution by a federal official have a right to recover damages against the official in federal

court despite the absence of any statute conferring such right."

In addition, the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. 1997e, is not applicable

to this case because I was released from BOP custody on May 9, 2016. See Talamantes v. Leyva

575 F.3d 1021 (9th Cir 2009) in which it was "undisputed that Talamantes was released from

custody over a year before filing his action in federal court. Therefore, he was not required to

exhaust administrative remedies before filing his action." Even if I had not been released,

administrative remedies have been exhausted. Among my attempts at such remedies was a

Request for Administrative Remedy (Exhibit 2) with attachment (Exhibit 3) marked received on

9/25/2015. After receiving the warden's response (Exhibit 4), I filed a Regional Administrative

Remedy Appeal (Exhibit 5). Eventually, I received a reply from Regional Director Juan D. Castillo

under the ID number 837457-R1 dated 10/9/2015 (Exhibit 7). Unfortunately, I did not receive

my copy of Exhibit 7 until some months later. I eventually filed a BP-11 which was denied on

10/18/2017 while I was in BOP custody on a new unrelated case (Exhibit 17).

In closing, Bivens gives me the right to sue federal officials in their individual capacities.

My claims are not barred by the PLRA or any other statute.

VENUE

This court is the proper venue for suits against federal officers in their individual capacities for acts taking place at USP Victorville.  The defendants themselves most likely reside in this area or nearby.   Unlike an FTCA action I cannot choose my place of residence as the venue.  Doing so would have a result similar to Scinto v. Federal Bureau of Prisons, 608 F.Supp 2d 4 (DC Dist. 2009) "Because plaintiff's alleged injuries occurred while he was incarcerated in North Carolina and prison officials were residents of North Carolina, Bivens claims for damages against officials in their individual capacities had to be transferred under 28 USCS 1404(a) in that personal jurisdiction was lacking under D.C. code 13-423 and venue could not be established within District of Columbia under 28 USCS 1391 (e)."

TIMELINESS

In Van Strum v. Lawn, 940 F 2d 406 (9th Cir. 1991) "the court affirmed the use of the personal injury statute of limitations for both the Bivens and 1983 claims because both required a uniform, generic, easily applicable limitations period that would safeguard the rights of civil rights litigants and emphasize the personal nature of constitutional wrongs "because actions under 1983 and those under Bivens are identical save for the replacement of a state actor under 1983 by a federal actor under Bivens."  "In determining the proper statute of limitations for actions brought under 42 U.S.C. 1983, we look to the statute of limitations for personal injury actions in the forum state." Maldanado v. Harris, 370 F. 3d 945 (9th Cir. 2004). "a 1983

action filed in California today would clearly be governed by California's new two-year statute of limitations . . . California law provides for the tolling of a statute of limitations for a period of up to two years based on the disability of imprisonment." Jones v. Blanas, 393 F. 3d 918 (9th Cir. 2004). My "actual, uninterrupted incarceration" ended on May 9, 2016. As a result, I have until May 9, 2018 to file a timely Bivens action in this matter, so my complaint is not time barred.

## SUMMARY OF ARGUMENTS

At or about 12:40 p.m. on July 29, 2015 on F-Range in the Special Housing Unit ("SHU") at USP Victorville I was assaulted by at least five correctional officers including a supervising lieutenant. This assault resulted in severe pain and a permanent physical injury resulting in a scar on my head. The scar reminds me of the beating I suffered every day I look in the mirror. "We think the Eighth Amendment, which is specifically concerned with the unnecessary or wanton infliction of pain in penal institutions serves as the primary source of substantial protection to convicted persons in cases such as this one where the deliberate use of force is challenged as excessive and unjustified." Whitley v. Albers, 475 U.S. 312 (1986). Additionally, California Penal Codes 240 and 242 permit victims of assaults and batteries to file tort claims seeking compensation for physical and psychological injuries from the perpetrators of those evils. The use of torture elevates this case beyond the typical 8th Amendment, excessive force, assault, and battery case. I am entitled to relief.

SUMMARY OF EVIDENCE

The evidence in this case includes 17 Exhibits in my possession and an unknown amount of evidence in the Government's possession.

I-Evidence in my possession

In addition to Exhibits I-7 documenting my experience with the BOP's Administrative Remedy Program as previously described, I also have documents from USP Victorville as well as regional and national BOP representatives concerning this matter.

The Discipline Hearing Officer Report ("DHO Report", Exhibit 8) dated 10/5/2015 by USP Victorville Discipline Hearing Officer Diana Elliott ("Ms. Elliott") uses memorandums by several named officers to support an inaccurate version of events that allegedly took place on 7/29/2015. Those officers are the named defendants in this case. The DHO Report describes (among other things) placing me "on the floor. . . with the proper force necessary." If things had ended there, I would not be suing today, but as the DHO Report states, subsequent events included "a beating and torture" after which I was treated for a "laceration to my scalp, superficial abrasion to my back, neck, face, and swelling and abrasion behind both ears" and Officer Luna was treated for "minor abrasion of both thumbs, tenderness of his right hand at the 2nd joint, right shoulder tenderness" from punching me repeatedly. The DHO Report also includes confirmation from Lt. Gabby that a surveillance tape exists, but Ms. Elliott omitted Lt. Gabby's testimony that the tape proves I never elbowed Luna in the face from her report.

Knowing that tapes exist, I submitted a Freedom of Information Act ("FOIA") request that included a letter to the Director of the BOP (Exhibit 9) and a FOIA form (Exhibit 10), my FOIA request was given the FOIA/PA Request Number 2016-05509 and denied by the Western Regional Office (Exhibit 11). After receiving an explanation from Regional Counsel Dennis M. Wong citing the Privacy Act (Exhibit 12), I appealed to the Office of Information Policy (Exhibit 13) and received a final denial from Sean R. O'Neill that said, "If you are dissatisfied with my action . . . file a lawsuit in federal district court." (Exhibit 14, p.2). My tort claim (Exhibit 15) followed. I demanded $4,000,000.00 in compensation for personal injury and $100.00 for my glasses. My glasses were also broken (Exhibit 16). While reincarcerated on a separate matter, I received a denial of my BP-11 (Exhibit 17).

## II-Evidence in Government Possession

The Government should have at least two video tapes and an unknown number of documents in their possession. I plan to seek information in accordance with Federal Rules of Civil Procedure regarding discovery.

The first tape should include the beating I suffered on F-Range in SHU at USP Victorville on July 29, 2015 at 12:40 p.m. at the hands of S.O.S. Luna. There could be two tapes because F-Range might have more than one camera and other parts of SHU have cameras. I know that at least one surveillance tape exists because Lt. Gabby admitted to viewing it (Exhibit 8, p.1).

The Government has tried really hard to keep me from getting a copy since my release (Exhibits 11, 12, 14), and before I got released a man known to me as SIA Alvarez promised to review Lt. Gabby's copy as part of his internal investigation (Exhibit 9).

The second tape is of my medical examination on 7/29/2015.  It begins with me being forced to walk from Observation Room 1 in the SHU to medical in bone tight shackles and cuffs. The walk normally takes about thirty seconds, but it took me about six minutes due to pain.  I know it exists because on or about April 7, 2016 a man from SIA came to see me.  He identified himself as SIA Alvarez and said that he had seen the tape.  After I got released I contacted him at (760) 530-5700 ext. 5869, his office at the FCI II (Exhibit 9) and he recommended that I use FOIA to get a copy but obviously that did not work.

I believe SIA Alvarez to be in possession of his internal investigation work product.  That work product should include copies of both tapes.  It may also explain why Lt. Williams was transferred in April 2016.

I believe that USP Victorville, the Western Regional Office, and other BOP offices have other documents pertaining to this matter.  They should also have original copies of all my grievances and the memos mentioned in the DHO Report.

In accordance with Fed. R.Civ. P. 34, I will be requesting copies of all video tapes and other documents pertaining to this matter that the Government possesses in the future.  If that fails, I will try to use this court's subpoena power to compel production.

FACTUAL BACKGROUND

On July 29, 2015, I was a BOP inmate assigned the number 74918-065 and incarcerated at USP Victorville. Within USP Victorville, I was further confined to the SHU because I was under investigation for unrelated accusations and a disciplinary hearing was pending. I was assigned to cell 260 on F-Range and my cell mate was Anthony Digiosaffatte (74354-053).

After being served lunch the guards wanted to search our cell because we did not return the plastic covers to our razors that had been flushed down the toilet. They never wanted the covers before, so we were surprised when they pulled us out to search. Digiosaffatte and I stood facing the wall in the hallway with our hands cuffed behind our backs. After failing to find our flushed razor covers, they took some of my pens. Technically, I was not "supposed" to have those either, but they were never a problem before and I objected to their seizure. I objected because I was representing myself in proceedings filed under 28 U.S.C. 2255 ("Section 2255") in the District of Oregon and needed the pens for future motions. See United States v. Sullivan, 2016 U.S. Dist. Lexis 11233 (D.C ORE 2016). As I objected I refused to move when Luna told me to go back into the cell. Luna then twisted my wrist, I let out a slight yelp, and elbowed him back in the chest while calling him a "fucker".

What happened next was largely documented in Exhibit 6 but I will re-tell the story here. I just want to note for the records that I wrote down what happened the next day and

eventually typed up what became Exhibit 6, so even though the document is dated 10/8/2015 it was drafted much earlier.

Luna called me a "piece of shit", shoved me down the hall a ways, and took me to the ground before Oeltjenbruns and Olmos piled on top of me. If things had ended there I would not be suing today. We had both overreacted. I had elbowed Luna in the chest and they had the right to use reasonable force to take control of me. I consider having one guy take an uncooperative inmate to the ground while others pounce on his body and legs to keep him from moving to be reasonable under the circumstances. Had I been injured as a result I would blame myself for that. Unfortunately, subsequent unreasonable actions resulted in my injuries and this lawsuit.

As Pedraza stayed back at the cell with Digiosaffatte, Luna punched me in the head repeatedly. Oeltjenbruns and Olmos may have punched me too but I was face down on the floor and could not tell if they joined in. I kept apologizing for my prior conduct and begged them to stop, but they just kept yelling "stop resisting!" as a cut opened up on my head and Luna kept hitting me.

Eventually Lt. Williams arrived on the range and I hoped that he would restrain his subordinates, but instead he encouraged them and joined in himself by saying stuff like, "you must be the stupidest fucking white boy I know."

I was then taken to Observation Room 1 for what can only be described as a sadistic combination of torture and battery for corporal punishment purposes. The only possible intent of which could have been to cause harm. Lt. Williams, Oeltjenbruns, Luna, and Olmos threw me face down onto a concrete slab, ripped off my jumpsuit, and began torturing me. Oeltjenbruns twisted my knee and ankle up against my back and buttocks while Olmos yelled "break it" for several minutes. It hurt so bad I thought my ankle was going to break.

Finally, my ankle was freed, but only because they wanted to apply bone tight restraints to my hands and legs. They turned me around and sat me up on the edge of the slab. Lt. Williams then put cuffs on my hands that were bone tight and added a "black box" on top of them. As he did that, the others applied bone tight shackles to my legs. Lt. Williams told me to stand up, but I fell back into a seated position on the slab due to the pain of the shackles. Lt. Williams then punched me in the face and said, "I told you to stand!", so I managed to stand. Eventually they left me for the next shift to find. I spent at least thirty minutes in agonizing pain as I lost feeling in my limbs. The cuffs and shackles were so tight that they couldn't be adjusted at all.

When the next shift finally arrived, they refused to loosen my restraints. They said that only Medical could have them loosened, but I would have to walk there first. As I walked in excruciating pain, I took at least six minutes to travel what is normally a thirty second walk. I noticed an officer videotaping me on the way there and he taped my medical exam, so I told my side of the story for the camera. The medical PA-C Bridggitte Wolverton said that my restraints

were too tight and they were finally loosened.

For the record, Wolverton and I do not get along. She had me put back in the SHU a couple of months later for threatening to expose her incompetence online. A threat that I have since carried out. Working with her on almost every other occasion was a nightmare but at least she got things right that time, for which I am thankful, and I can say that even Wolverton could tell that those restraints were too tight.

After my exam, I was fortunate that the inmate orderly (Robert Hunter) found my pancaked glasses in the trash. Otherwise I would have had to do the rest of my time blind. I tried to get them fixed (Exhibit 16), but they never were.

In September 2015, I was found guilty of violating a BOP rule against assault for throwing an elbow. As the DHO Report shows, I was falsely accused of elbowing Luna in the face and Ms. Elliott left out the video evidence that no elbow hit his face. I believe that Luna either faked injuries, injured himself, or had himself injured by a buddy to get paid time off work. The F-Range video should prove Luna's guilty of worker's compensation fraud against the United States.

I pursued administrative remedies but was blown off for the most part (Exhibits 2—7). Finally, on or about April 7, 2016, SIA Alvarez came to see me. At that time I was back in the SHU for allegedly introducing contraband. Alvarez said that if true my allegations would constitute staff misconduct. He also agreed that even if I had slipped my cuffs on F-Range as

alleged (I did not slip my cuffs.) and elbowed Luna in the face, that would not justify hitting me in the head once I was on the ground, compliant, restrained, and helpless. I told him to get the F-Range video from Lt. Gabby and after I got out he confirmed that he had a copy of the tape but that he would not give me a copy and I would need to file a request with the BOP under FOIA to get a copy.

Before my release and after speaking with Alvarez, I asked Lt. Williams an unrelated question to which he responded with something to the effect of "I am not speaking to you anymore, Sullivan, I heard you filed some bullshit on me, you know I never disrespected you like that." His response was clearly more for other inmates to hear than me and I responded by saying "Yes, you did." I have not seen Lt. Williams since. A couple of weeks later a new SHU lieutenant showed up and said that they had "gotten rid of Lt. Williams." I later heard a rumor that he had been spotted working across the street at the FCI II but that has not been confirmed. I suspect he was transferred due to his misconduct. "Gypsy Cops" like him are common in the BOP. They get into trouble and are moved from prison to prison. Lt. Williams seemed like he liked his job too much to just leave, there had to be a reason.

After my release I tried to get copies of the videos via FOIA (Exhibits 9-14) with the hope of showing them to lawyers and getting one to take my case on contingency. Knowing how long it would take to pursue a FOIA lawsuit as Mr. O'Neill suggested (Exhibit 14) and sensing the statute of limitations on my tort claim approaching, I decided that this lawsuit would be more productive.

## ARGUMENTS

Lt. Williams, S.O.S. Luna, Oeltjenbruns, Olmos, and Pedraza willfully used excessive force in violation of the 8th Amendment when they assaulted, battered, and tortured me. The force used was excessive to the point of violating the 8th Amendment's prohibition on cruel and unusual punishment because it was not done as a good faith effort to maintain or restore discipline, but maliciously and sadistically for the purpose of causing harm. All in violation of my constitutional rights and California law. Pedraza's failure to intervene is equally unconstitutional.

### 1. 8th Amendment Claims

Excessive force jurisprudence has focused primarily on determining what reasons for using force constitute cruel and unusual punishment in violation of the Eighth Amendment. The focus is on the intent of the actor and not so much the amount of force used. In Whitley the Supreme Court held "It is obduracy and wantonness, not inadvertence or error in good faith that characterize the conduct prohibited by the cruel and unusual punishments clause. . . The infliction of pain in the course of a prison security measure, therefore, does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense. . . We think the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns" on the position previously taken by the Second

Circuit in Johnson v. Glick, 481 F.2d 1028 (2nd Cir. 1973) which was "Whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically to cause harm." I can think of no better example of such conduct than the beating and torturing of a defenseless prisoner.

I feel like my case is a combination of factors similar to those in Hudson v. McMillian, 503 U.S. 1 (1992) and Hope v. Pelzer, 536 U.S. 730 (2002). In Hudson an officer places an inmate "in handcuffs and shackles, took the prisoner out of his cell and walked him toward the penitentiary's 'administrative lockdown' area . . . on the way there, [the officer] punched [the inmate] in the mouth, eyes, chest, and stomach while [another officer] held the inmate in place and kicked and punched him from behind . . . the supervisor on duty, watched the beating, but merely told the officers 'not to have too much fun' . . . As a result of the episode, [the inmate] suffered minor bruises and swelling of his face, mouth, and lip. . . The blows. . . are not de minimis for Eighth Amendment purposes . . . Punishment 'incompatible with the evolving standards of decency that mark the progress of a maturing society' or 'involving the unnecessary and wanton infliction of pain' are repugnant to the Eighth Amendment . . . 'to deny . . . the difference between punching a prisoner in the face and serving him unappetizing food is to ignore the 'concepts of dignity, civilized standards, humanity, and decency' that animate the Eighth Amendment." In this case, like in Hope "We may infer the existence of this subjective state of mind from the fact that the risk of harm is obvious . . . Any safety concerns had long since abated by the time petitioner was handcuffed to the hitching post because [the

inmate] had already been subdued, hand cuffed, placed in leg irons, and transported back to the prison . . . Despite the clear lack of an emergency situation, the respondents knowingly subjected him to a substantial risk of physical harm."  Like in Hudson I was beaten while in restraints and a supervisor "expressly condoned" the abuse.  Like in Hope the abuse took place after "safety concerns had long since abated."  There are times when striking an inmate to gain control is reasonable, but it is hard to think of a more unreasonable act than striking a subdued inmate that has been placed in restraints, is cooperative, and totally helpless.

The fact that I was tortured in the Observation Room after the beating couldn't make their intentions more obvious.  Their actions served no penological interests beyond the use of corporal punishment to deter future insubordination.  Corporal punishment has been illegal for a long time because "corporal punishment is easily subject to abuse in the hands of the sadistic and unscrupulous . . . [it] creates other psychological problems and makes adjustment to society more difficult".  Jackson v. Bishop, 404 F. 2d 571 (8th Cir. 1968).  Such conduct violates clearly established federal law in this circuit "Physical restraint will not be used as punishment . . . nor will restraint equipment be applied in any way so as to inflict physical pain and undue physical discomfort, or to restrict blood circulation."  Spain v. Procunier, 600 F. 2d 189 (9th Cir. 1979).  "Punishments of torture or unnecessary cruelty are forbidden by Constitutional provision against cruel and unusual punishments."  Wilkerson v. Utah, 99 U.S. 130 (1879).  Such conduct has long been considered a violation of "a clearly established

constitutional right 'of which a reasonable person would have known,' Harlow v. Fitzgerald, 457

U.S. 800 (1981)."  Watts v. McKinney, 394 F. 3d 710 (9th Cir 2009) also saying "to suppose that a

reasonable person, let alone a trained police officer, would not know that kicking a helpless

prisoner's genitals was cruel and unusual conduct is beyond belief."

### 2.  State Law Assault and Battery

In case this court somehow finds the guards' conduct in my case constitutional, I want to

make a state law claim as backup, "under California Law, a plaintiff bringing a battery claim

against a law enforcement official has the burden of proving the officer used unreasonable

force." Bowoto v. Chevron Corp, 621 F. 3d 1116 (9th Cir. 2010).  Since the force used was

obviously unreasonable, then proving my claim would meet the requirements to sustain a

battery claim against law enforcement officers in the state of California.  "The elements of a

battery claim in California are that (1) The defendant intentionally did an act that resulted in

harmful or offensive contact with the plaintiff's person.  (2) The plaintiff did not consent to the

contact, and (3) The contact caused injury, damage, loss, or harm to the plaintiff."  Tekle v.

United States, 511 F. 3d 839 (9th Cir. 2005).  The defendants in my case acted intentionally, I did

not consent to the contact, and I was injured.

### 3.  Failure to Intervene

Officer Pedraza had an obligation to intervene.  The others did too, but they joined in

while Pedraza appears to have stayed back with Digiosaffatte.  See Smith v. Mensinger, 293

F.3d 641 (3rd Cir. 2002) "a corrections officer's failure to intervene in a beating can be the basis

of liability . . . if the corrections officer had a reasonable opportunity to intervene and simply

refused to do so.  Furthermore, we hold that a corrections officer can not escape liability by

relying upon his inferior or non-supervisory rank vis-a-vis the other officers."

### 4.  Permanent Injuries

In Hudson the Supreme Court made it clear that although injury is not required to prove

an excessive force claim, it is still relevant because it can better demonstrate the perpetrators'

state of mind.  In my case, even though my permanent physical injury is cosmetic, it still results

in daily psychological pain.  The location of the scar being on my head directly above my

thinning hairline makes it much worse than it would be on just about any other place on my

body.  I have bad memories that come flooding back whenever I see it.  Most people barely

notice it at all, but for me I see what happened every day and I do not like that.

### RELIER SOUGHT

I am seeking compensatory and punitive damages.

### 1.  Compensatory Damages

I am asking for $4,000,000.00 in compensation from each of the five defendants.

That amount is based largely on media research of settlements and judgements in other excessive force cases.  That might sound excessive, but it pales in comparison to the $22,000,000.00 awarded by a jury to a man shot by police and paralyzed in Simmons v. Bradshaw, 2018 BL 8509, 11th Cir., No. 16-10876.  I may not be paralyzed, but I still have an injury that I will always have to deal with unless some cosmetic procedure can fix it.  Even then I will never be free of the awful memories.

### 2.   Punitive Damages

In Carlson the Supreme Court described the benefits of a Bivens action over a FTCA action "(i)The Bivens remedy, being recoverable against individuals, is a more effective deterrent than the FTCA remedy against the United States; (ii)a plaintiff cannot opt for a jury trial in an FTCA action as he may in a Bivens suit . . . punitive damages . . . are especially appropriate to redress the violation by a Government official of a citizen's constitutional rights."

I can think of no better reasonable deterrent than an award of $4,000,000.00 in punitive damages against every defendant in this case. It will send a message to every prison guard in America that thou shalt not beat or torture thy prisoner, for if they do, the court will strike back at them with great vengeance and furious anger that will result in financial ruin.

NOTICE OF INTENT TO AMEND OR SUPPLEMENT

Fed. R. Cv. P.15 ("Rule 15") provides a number of options for amending or supplementing pleadings. I have a good idea what the video tapes should show, but I don't know what other Government documents might reveal in the discovery process. I may ask this court for leave to amend or supplement under Rule 15 and I hope that this notice minimizes any prejudice that the other parties might claim.

CONCLUSION

I suffered permanent physical injury that has led to ongoing psychological injury as a result of assault, battery, and torture by the named defendants in violation of the cruel and unusual punishment clause of the Eighth Amendment of the Constitution. The defendants are liable and I am entitled to compensation as well as punitive damages. I demand a jury trial so that the deepest depths of their depravity can be explored.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 4/24/18

Cyrus Andrew Sullivan
Plaintiff-Pro Se

Page 19 of 19

*Exhibit 1*



U. S. Department of Justice
Federal Bureau of Prisons
Los Angeles Consolidated Legal Center

Metropolitan Detention Center Los Angeles

535 N. Alameda Street
Los Angeles, CA 90012

**DATE MAILED:** July 25, 2017

**Certified Receipt: 7015 1660 0000 1791 6398**

Cyrus Andrew Sullivan
Reg. No. 74918-065
1236 SE 46th Avenue
Portland, OR 97215

RE:   Administrative Claim No. TRT-WXR-2017-01844

Dear Claimant:

This is in response to the administrative claim you submitted asserting four distinct claims arising out of your incarceration at the United States Penitentiary Victorville ("VIP"), California.

First, you seek $100.00 in monetary damages compensation. Specifically, you claim that staff damaged your pair of eyeglasses during an incident that occurred on July 29, 2015. This portion of your claim was considered under 31 U.S.C. § 3723. An investigation into this portion of your claim was conducted and completed. A review of the interviews conducted with staff confirms that staff did not damage any pairs of eyeglasses during the incident that occurred on July 29, 2015. As a result, you have neither set forth a factual basis for holding the United States liable under 31 U.S.C. § 3723 nor established that you suffered any compensable damages.

This letter is a denial of your personal property claim. You cannot file suit in an appropriate U.S. District Court as there is no judicial review for claims decided pursuant to 31 U.S.C. § 3723. You may request, in writing, that the Bureau reconsider your claim. Your request for reconsideration must be submitted within three months of the date of this letter. You must include additional evidence of the damage of loss to support your request for reconsideration.

In addition, you seek $4,000,000.00 in monetary damages compensation. Specifically, you claim that staff assaulted you on July 29, 2015. Additionally, you claim that you suffered a laceration on your head, nerve damage in your left hand, a toe fracture, aggravated shoulder injury and pain.

The agency considered this portion of your claim separately under the provisions of the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671, et seq. An investigation into your claims was conducted and completed. The investigation fails to disclose any evidence of negligence for which the United States is liable. You have failed to establish that you have suffered an injury as a result of staff negligence in this matter.

1

*Exhibit 1*

Cyrus Sullivan, Reg. No. 74918-065
Administrative Claim No. TRT-WXR-2017-01844

Accordingly, this portion of your claims is denied. If you are not satisfied with the determination of this portion of your claim, you are afforded six months from the date of the mailing of this letter via certified mail in which to bring suit in the appropriate United States District Court.

Sincerely,

Eliezer Ben-Shmuel
Supervisory Attorney

Dennis M. Wong
Western Regional Counsel

Exhibit 2

U.S. DEPARTMENT OF JUSTICE                                    REQUEST FOR ADMINISTRATIVE REMEDY

Federal Bureau of Prisons

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: _____ _____ _____ _____
        **LAST NAME, FIRST, MIDDLE INITIAL**   **REG. NO.**   **UNIT**   **INSTITUTION**

**Part A- INMATE REQUEST**

_____                                    _____
        **DATE**                                              **SIGNATURE OF REQUESTER**

**Part B- RESPONSE**

RECEIVED
SEP 2 5 2015
By_____

_____                                    _____
        **DATE**                                              **WARDEN OR REGIONAL DIRECTOR**

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

THIRD COPY: RETURN TO INMATE                                CASE NUMBER: _____
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
                                                            CASE NUMBER: _____

**Part C- RECEIPT**

Return to: _____ _____ _____ _____
            **LAST NAME, FIRST, MIDDLE INITIAL**   **REG. NO.**   **UNIT**   **INSTITUTION**

SUBJECT: _____

Py 1                    Exhibit 3                    RE: 7129115

# Attachment

Review of the video should show that
ficer Luna twisted my wrist immediately before
e point where I was falsely accused of elbowing
m in the face. After that I was punched repeatedly
ile lying on the ground in handcuffs. Then I
as tortured in the observation room, punched in
e face by Lt. Williams, and forced to walk to
dical in bone tight shackles. Injuries were documented
PA Wolverton and recorded. Today I have a scar
the top of my head, numbness in my left hand/wrist,
n in my possibly fractured foot, and limited shoulder
bility.


I also have documented PTSD and Asperger's Syndrome.
psychologist Tony Attwood said in his book The
plete Guide to Asperger's Syndrome, "When feeling
ry, the person with Asperger's Syndrome does not appear
be able to pause and think of alternative strategies
resolve the situation... There is often an instantaneous
ysical response without careful thought". In addition people
th Asperger's are hypersensitive to touch, so
ouch, and especially attempts at physical restraint, can increase
e feelings of anger and energy". On a scale of 1-10
xiety that reaches a 1 or 2 on the anger scale
r a normal person could be a 9 or 10 for someone
th Asperger's, I believe that this should be enough to

Exhibit 4

Request for Administrative Remedy
Case No.: 836848-F1

This is in response to your Request for Administrative Remedy received
in this office on September 25, 2015.  In your request, you allege
on July 29, 2015, staff assaulted and tortured you.  As relief, you
are requesting monetary compensation and for all surveillance footage
be turned over to you or counsel at a later date.

The Bureau of Prisons takes allegations of staff misconduct
seriously.  Staff are held to a high standard of treating inmates
fairly, impartially, and humanely.  Your allegations will be
reviewed, and if it is determined an investigation is warranted,
it will be referred to the proper investigating authority.  However,
information concerning staff conduct and performance is protected
by the Privacy Act, 5 USC §552a.  Therefore, you will not be provided
information regarding the outcome of any review or investigation.

Program Statement 1330.17, Administrative Remedy Program, paragraph
c, notes there are statutorily-mandated procedures in place for
filing an administrative tort claim.  Any claims for inmate accident
compensation claims must be filed in accordance with the Federal
Tort Claims Act.  You may obtain the appropriate forms by submitting
an Inmate Request to Staff through your unit team.

Accordingly, your Request for Administrative Remedy is for
informational purposes only.  If you are dissatisfied with this
response, your appeal must be received by the Regional Administrative
Remedy Coordinator, Federal Bureau of Prisons, Western Regional
Office, 7338 Shoreline Drive, Stockton, CA 95219, within twenty (20)
calendar days from the date of this response.


_____          9·28·15
Richard B. Ives, Complex Warden           Date

*Exhibit S*

U.S. Department of Justice                    **Regional Administrative Remedy Appeal**

Federal Bureau of Prisons      RE: Incident report from 7/29/15 @ 12:40 pm

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: Sullivan, Cyrus, A.     74918-065     4A     USP Victorville
       LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

**Part A - REASON FOR APPEAL**

On July 29, 2015 officer S. Luna falsely accused me
of elbowing him in the face. I was found guilty despite
no video evidence that I did not elbow him in the
face. The Date and Time (field 13) on the form is also
wrong so this should be dismissed on technicality grounds.
I would like an independent review of the video, that
the video be saved for any future legal action, and for
the incident report to be dismissed for the aforementioned
reasons as well as the fact that punishing me after the
sentence I received is cruel and unusual punishment. I would
also like mental health considered. See "Attachment"
9/20/15  for more.

DATE                                    SIGNATURE OF REQUESTER

**Part B - RESPONSE**

SEP 30 2015

DATE                                    REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE           CASE NUMBER: 832457-R1

**Part C - RECEIPT**                             CASE NUMBER: _____

Return to: _____
          LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

SUBJECT: _____

Exhibit 6

## 7/29/2015 Assault and Torture Incident Report

On July 29, 2015 at 12:40 pm I was standing handcuffed and facing the wall on F-Range in the Special Housing Unit (SHU) at USP Victorville outside of cell 260. Lieutenant Williams, Officer S. Luna, Officer Petraza, and at least two other officers were collecting razors in SHU. Usually just giving them back the razors is enough, but that time they wanted every little part of them including the little plastic covers, but two of ours had been flushed down the toilet, so they cuffed up my celly (Anthony Digiosaffatte 74354-053) and I before putting us in the hallway to search for the covers.

During their search they found a few items they said were contraband. Specifically some food trays, a laundry bag, and a flex pen. The flex pen had been given to me with my hygiene items when I got there. I believed that I had a right to a flex pen for the purpose of writing motions for the court because I had previously been told by staff that people with active cases can have flex pens in SHU. They said that only pencils are allowed in SHU and if I wanted a pen I could only use it in the SHU law library. That would have been fine if I could have gotten into the law library and stay long enough to write a motion, but I was never allowed in there.

While trying to persuade them to give me my pen back Luna was holding my hands and suddenly twisted my wrist hard enough to cause physical pain. His attack was needless and with no warning at a time when the mere threat of force would have been enough to persuade me to go back into my cell. When I reacted defensively to his aggression out of natural reflex he called me a "piece of shit" and threw me to the ground where I stayed lying prone, face down, and still with my hands cuffed behind my back. All of the officers except for Petraza, who had stayed back with Digiosaffatte, piled on top of me. At that point they had used all the physical force necessary to take control of me. For the record I have Asperger's Syndrome and PTSD. As a result I do not respond well to sudden physical contact, especially from behind, and especially when it causes physical pain.

What followed was the worst beating I've ever received in my life. Luna and possibly others punched me in the head repeatedly and wouldn't stop even after the top of my head split open. There was blood all over the floor and wall. I kept yelling stuff like "I'm sorry" and "I have autism, I couldn't help it", but they just kept hitting me while yelling "stop resisting". Eventually Lt. Williams, who had left the range briefly right before the attack started, returned to F-Range. I asked him to help me, but he only encouraged my attackers further saying among other things "you must be the stupidest fucking white boy I know".

1

Exhibit 6

Then they took me down to Observation Room 1 where Lt. Williams and the other officers threw me down on a big concrete block face down. Then they ripped off my jumpsuit, shoes, and socks. Then one of them put me in an ankle restraint hold causing pain in my left knee and ankle as I was telling them that I could not breathe. At one point I thought they were going to break my ankle because one of them kept yelling "break it". Then they put shackles and cuffs on me with a black box. The restraints were bone tight. So tight I could not stand without excrutiating pain as my hands and feet turned purple. Then Lt. Williams punched me in the face for falling after trying to stand up for not staying still. After that they left me in there for at least 30 minutes of continuous and excrutiating pain.

Finally some other officers came by after shift change. When I complained of the pain they said that I could only get the restraints loosened after I went to medical. I was then forced to slowly walk down to medical in my underwear and barefoot with every step causing unbearable pain. Once in medical P.A. Wolverton cleaned off blood that covered my entire face and told the officers to loosen my restraints because they were way too tight. I made sure to document the assault and torture on camera as an officer taped my medical exam.

After that I was lucky that the inmate orderly (Robert Hunter) found my glasses in the trash or I would be blind right now. Still, they look like someone intentionally stepped on them because they look pancaked with scratched lenses and a missing nose pad. Fortunately the hinges are fine, so I can wear them, but they fall off easily and one of the lenses pops out with minimal force.

In September (the 9th I believe) I went before Disciplinary Hearing Officer (DHO) Elliott falsely accused of elbowing Luna in the face as he was twisting my wrist, but was still found guilty of staff assault because after reviewing the tape Lt. Gabby said that I clearly elbowed him in the chest, which I did. I was never allowed to view the surveillance tape on F-Range. Lt. Gabby said it was inconclusive as to the twisting of the wrist, which is entirely possible since it is easy to twist a handcuffed wrist without the motion being obvious on camers. When asked about the beating Lt. Gabby seemed like he didn't want to get into it and downplayed the footage. Giving the type of people Lt. Gabby works with every day I can understand how he would not want to go against them.

On 9/20/2015 I filed an official BP-9 complaint requesting monetary compensation to be determined by counsel at a later date and for all footage to be saved. I had already been told by Lt. Gabby that the F-Range footage was saved, but I'm not sure about footage from Observation Room 1 or other parts of SHU. The medical exam footage should also be saved. On 9/28/2015 I received a generic response from complex warden Richard B. Ives saying that the incident would be investigated, but that I would not have

2

Exhibit 6

access to the result of the investigation due to the Privacy Act (5 U.S.C. 522a).

Today I have a nasty scar on the top of my hear right above the hair line that is only slightly covered by my ever thinning hair. It serves as a constant reminder of what happened every time I look in the mirror and I feel like my PTSD has gotten worse. I have yet to regain full feeling in my left hand due to the bone tight cuffs and black box. If I touch my wrist where the cuff was I get a weird, sometimes painful, shooting sensation. That also serves as a constant reminder of what happened. I've also re-aggravated an old shoulder injury and have limited range of motion as a result. I also believe that I suffered a minor fracture in my left foot and still experience pain in the joint between my foot and big toe. At my DHO hearing P.A. Wolverton testified as to the contents of her medical report and all the injuries to my head were well documented. They included the cut as well as bruising all around my face and head along with cuts to my ears. Even if the surveillance footage does not show the assault well or at all, the medical report makes it obvious that something happened and I believe that the report by itself proves my story beyond a preponderance of the evidence.

I believe that these officers, especially Luna, are guilty of aggravated assault and torture. Lt. Williams is culpable because he had command responsibility and contributed with his own conduct. Warden Ives had command responsibility also. I would like to pursue a battery lawsuit seeding compensation for my pain and suffering as well as punitive damages in addition to anything else I am entitled to as a victim.

I swear under penalty of perjury that this statement is true and accurate to the best of my knowledge.

10/8/2015

Cyrus Sullivan
74918-065
United States Penitentiary
P.O. Box 3900
Adelanto, CA 92301

3

Exhibit 7

837457-R1
FCC Victorville

You are requesting administrative relief regarding the decision of the Discipline Hearing Officer (DHO) on September 9, 2015, in which you were found to have committed the prohibited act of Assaulting any Person without Serious Injury, Code 224. You make several claims which will be addressed below. For relief, it appears you wish to have the incident expunged from your discipline record and the sanctions reversed.

On appeal, the appropriate reviewing authority shall consider: a. Whether the UDC or DHO substantially complied with the regulations on inmate discipline; b. Whether the UDC or DHO based its decision on some facts, and if there was conflicting evidence, whether the decision was based on the greater weight of the evidence; and c. Whether an appropriate sanction was imposed according to the severity level of the prohibited act, and other relevant circumstances.

A review of the disciplinary action indicated that you were provided due process as required by Program Statement 5270.09, Inmate Discipline Program. You were given advanced written notice of the charges against you more than 24 hours prior to your appearance before the DHO. You were afforded the opportunity to have staff representation and to call witnesses. You waived both of these rights. You were afforded the opportunity to make a statement to the DHO and present documentary evidence on your behalf. Your admission has been addressed by the DHO and reflected in the record. There is indication in the record that you presented documentary evidence and this was considered by the DHO.

The DHO report clearly indicates the basis for the finding that you committed the prohibited act and explains the purpose of imposing the sanctions which are within policy.

You claim you are innocent of the charge. Bureau of Prisons policy directs the DHO to consider all evidence presented at the hearing and to make a decision based on some facts, and if there is conflicting evidence, to base the decision on the greater weight of the evidence. It is apparent that the DHO found you guilty based on the greater weight of the evidence. Evidence weighed against you included the account of the reporting officer, the documentary evidence contained in the discipline packet, and your admission to the DHO. Such evidence supports the fact that you assaulted staff. This evidence, coupled by your inability to produce credible and verifiable evidence which exonerates you from the charge, reasonably led the DHO to a guilty finding.

You claim there is an error on the DHO report. Specifically, section 13 reads, "7/29/15". It should have read, 7/29/15. We find that to be an oversight in the preparation of that order. Regardless, that order has no bearing regarding the charge levied against you.

You request an independent review of the video evidence. You do not have the right to have evidence independently tested.

Amongst the documents you submitted in your appeal we note you present new evidence for consideration. You indicate your mental health status was a factor leading up to this incident. Inmates are afforded the opportunity to present or request evidence for review or consideration at the UDC or DHO hearing, not during the appeal process. This is not the forum to request such action.

Lastly, you allege staff misconduct. The Bureau of Prisons takes allegations of misconduct seriously, and makes every attempt to hold staff to the highest standards. As a result, your allegations of staff misconduct will be reviewed, and if necessary, referred to the appropriate department for further action. However, as personnel matters are protected by the Privacy Act, we are unable to disclose anything further.

The allegations presented in your request for relief have been investigated and determined to be without merit. Thus, your request for relief from the discipline action or sanctions is denied.

If dissatisfied with this response, you may appeal to the Office of the General Counsel, Bureau of Prisons, 320 First Street, NW, Washington, D.C., 20534. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

10/9/15

Exhibit S

BP-A0304
AUG 11

## DISCIPLINE HEARING OFFICER REPORT  CDFRM

INMATE COPY

U.S. DEPARTMENT OF JUSTICE

FEDERAL BUREAU OF PRISONS

| Institution: | USP Victorville | Incident Report Number: | | 2748458 |
|---|---|---|---|---|
| NAME OF INMATE: | SULLIVAN, Cyrus | REG NO.: | 74918-065    UNIT: | 4A |
| Date of Incident Report: | 07-29-2015@2:50PM | Offense Code: | 224 | |
| Date of Incident: | 07-29-2015@12:40PM | | | |
| Summary of Charges: | Assaulting Any Person | | | |

## I.  NOTICE OF CHARGE(S)

A. Advanced written notice of charge (copy of Incident Report) was given to inmate on

(date)    08-11-2015    at (time)    6:32PM    (by staff member)    K. Bowles, Act. Lieutenant

B. The DHO Hearing was held on (date)    09-09-2015    at (time)    5:28PM

C. The inmate was advised of the rights before the DHO by (staff member):

V. Torres, Unit Team    on (date)    08-13-2015@2:00PM    and a copy of the advisement of rights form is attached.

## II.  STAFF REPRESENTATIVE

| A. Inmate waived right to staff representative. | Yes: | | No: | X |
|---|---|---|---|---|

| B. Inmate requested staff representative and | Lieutenant J. Gabby | appeared. |
|---|---|---|

Lt. Gabby stated, "He complained the hand cuffs were too tight and hurting his wrists.  He did not say anything about the officer twisting his wrist.  I would have put that down.  There was no injury found that would indicate his wrist was twisted.  His injuries were consistent with the use of force.  I reviewed the video.  I could not see that anything out of the ordinary was going on.  It looked like a standard escort.  I couldn't see any twisting."

C. Requested staff representative declined or could not appear but inmate was advised of option to postpone hearing to obtain another staff representative with the result that:    N/A

| D. Staff  Representative | N/A | was appointed |
|---|---|---|

## III.  PRESENTATION OF EVIDENCE

| A. Inmate admits | X | Denies | | the charge(s). |
|---|---|---|---|---|

B. Summary of Inmate Statement:
Inmate Cyrus SULLIVAN, Register Number 74918-065, stated, "I don't believe I hit him in the face. I may have moved my elbow when he twisted my wrist. He didn't warn me he would use force if I kept talking. I believe I struck him in the chest." Inmate SULLIVAN also submitted a written statement.

C. Witnesses:

| 1. The inmate requested witness(es). | Yes: | | No: | X |
|---|---|---|---|---|

2. The following persons were called as witnesses at this hearing and appeared.
N/A

3. A summary of the testimony of each witness is attached.

N/A

*Exhibit 8*

3P-A0304
AUG 11

## DISCIPLINE HEARING OFFICER REPORT   CDFRM

INMATE COPY

U.S. DEPARTMENT OF JUSTICE                    FEDERAL BUREAU OF PRISONS

| Name of Inmate: | SULLIVAN, Cyrus | Reg. No.: | 74918-065 | Hearing Date: | 09-09-2015 |
|---|---|---|---|---|---|

4. The following persons requested were not called for the reason(s) given:
N/A

| 5. Unavailable witnesses were requested to submit written statements and those statements received were considered. | Yes | | No | | N/A | X |
|---|---|---|---|---|---|---|

D. Documentary Evidence: In addition to the Incident Report and Investigation, the DHO considered the following documents:
Supporting Memorandum
Evidence Photographs
Clinical Encounters
Written Statement provided by inmate SULLIVAN

E. Confidential information was used by DHO in support of his findings, but was not revealed to the inmate. The confidential information was documented in a separate report. The confidential information has been (confidential informants have been) determined to be reliable because: N/A

## IV. FINDINGS OF THE DHO

| X | A. The act was committed as charged. |
|---|---|
| | B. The following act was committed: |
| | C. No prohibited act was committed:  Expunge according to Inmate Discipline PS. |

## V. SPECIFIC EVIDENCE RELIED ON TO SUPPORT FINDINGS (Physical evidence, observations, written documents, etc.)

The inmate's due process rights were read and reviewed by the DHO to the inmate. The DHO confirmed the inmate received a copy of his incident report. The inmate submitted a written statement for consideration. The inmate was afforded an opportunity to meet with his staff representative. The DHO advised the inmate that the staff witness requested would not be called to testify regarding the loosening of his hand restraints. The DHO confirmed the medical assessment confirmed the hand restraints were loosened. The inmate indicated this information was adequate and he did not request the appearance of medical staff to testify. The DHO advised the inmate a delay occurred in the processing of the incident report, and further advised the inmate this incident report was referred to an outside agency for possible criminal prosecution. The inmate could not offer any justification how this delay negatively affected his ability to defend himself at the hearing. The inmate understood his due process rights, and was ready to proceed with the DHO Hearing.

The DHO found inmate Cyrus SULLIVAN, Register Number 74918-065, committed the prohibited act of Assaulting Any Person, in violation of Code 224. The DHO relied upon the reporting officer's statement which indicated on July 29, 2015, at approximately 12:40 p.m., the reporting officer was escorting inmate SULLIVAN, Cyrus, Register Number 74918-065, back to cell 260 on F-Range (of the Special Housing Unit) when he became aggressive and was able to hit the reporting officer in the face with his right elbow. The reporting officer then placed inmate SULLIVAN on the floor to prevent further assault to himself or other staff.

The DHO relied upon the Supporting Memorandum provided by Senior Officer Specialist N. Pedraza who indicated on July 29, 2015 at approximately 12:40 p.m. he was involved in an immediate use of force on inmate SULLIVAN. He observed SULLIVAN being aggressive toward staff. SULLIVAN was refusing to go back into his cell. Staff attempted to put inmate SULLIVAN back into his cell and he became combative. Inmate SULLIVAN turned his left shoulder and used his elbow to strike Officer Luna in the face. Inmate SULLIVAN was placed on the ground to gain control of his aggressive behavior. Officer Pedraza assisted staff in controlling inmate SULLIVAN's legs. Inmate SULLIVAN was then escorted to an observation cell to be medically assessed.

*Lthen how do you expect
bad ways?*

*Exhibit 8*

### DISCIPLINE HEARING OFFICER REPORT   CDFRM

INMATE COPY

BP-A0304
.DG 11

**U.S. DEPARTMENT OF JUSTICE**                                    **FEDERAL BUREAU OF PRISONS**

The DHO relied upon the Supporting Memorandum provided by Senior Officer T. Oeltjenbruns who indicated on July 29, 2015 while conducting a cell search of cell 260 on F Range in the Special Housing Unit, inmate SULLIVAN was being placed back into his cell. He was given a direct order to go back into his cell. That is when he turned in an aggressive manner and struck the escorting officer's facial region with his elbow. He assisted in placing the inmate onto the ground with the proper force necessary and gave him multiple orders to give up his other hand because he had slipped his cuffs. He was finally able to apply the hand restraints. He then escorted the inmate with another officer to Observation Cell #1, where he helped apply progressive restraints. He received injuries to his right knee and right elbow during the incident.

*Took torue*

The DHO relied upon the Supporting Memorandum provided by Senior Officer A. Olmos who indicated on July 29, 2015 at approximately 12:40 p.m. he witnessed inmate SULLIVAN being aggressive toward staff. After a cell search was conducted on inmate SULLIVAN's cell, staff attempted to put inmate SULLIVAN back into his cell; he then became combative. Inmate SULLIVAN struck Officer Luna in the face. He assisted in placing inmate SULLIVAN on the ground to gain control of his aggressive behavior. Inmate SULLIVAN was then escorted to an observation cell to be medically assessed.

The DHO relied upon the Supporting Memorandum provided by Senior Officer Specialist S. Luna who indicated on July 29, 2015 at approximately 12:40 p.m. as he was escorting inmate SULLIVAN back to cell 260 on F Range of the Special Housing Unit, SULLIVAN became aggressive and hit him in the face with his right elbow. He then placed inmate SULLIVAN on the floor to prevent further assault to himself or other people. He experienced right shoulder pain, pain in both of his knees and both hands and a small cut on his right and left thumbs as a result of the immediate use of force.

*Even punching and,*

The DHO relied upon the Clinical Encounter performed on Officer S. Luna. Officer Luna stated to the clinician he had been elbowed in the face by an inmate and was experiencing pain. Officer Luna also indicated he had pain in the shoulder, hands and knees as a result of an immediate use of force due to the assault by the inmate. The clinician noted erythema and tenderness to the left side of Officer Luna's facial area and advised him to apply ice and follow up with his primary physician for further treatment.

The DHO considered the written statement provided by inmate SULLIVAN in which he indicated he was inaccurately charged with Assault on Staff and claimed he was Assaulted by Staff. He claimed it was not physically possible for him to elbow the reporting officer in the face while handcuffed due to limited vertical mobility. SULLIVAN indicated the reporting officer did not report twisting his wrist in a painful fashion immediately beforehand, and he claimed he suffered a beating and torture from the reporting officer, other officers, and Lieutenant Williams while in the observation room. SULLIVAN requested the video surveillance footage be reviewed for F-Range, Observation Room 1, and the Main Floor in SHU to see what really took place, and indicated he had already endured cruel and unusual punishment far in excess of any punishment permitted by the program statement. He requested the incident report be expunged on the basis that he was already punished and the reporting officer unnecessarily assaulted him by twisting his wrist suddenly. He requested copies of the video footage be provided to him or his appointed lawyer. He also claimed he did not get a copy of the incident report until almost 2 weeks after the incident and indicated he thought it might be retaliation for a motion he filed in court. The DHO considered inmate SULLIVAN's allegations the officer twisted his wrist and that he was beaten and tortured by staff. The Clinical Encounter completed by medical staff references a minor laceration to SULLIVAN's scalp, superficial abrasion to his back, neck, face, and swelling and abrasion behind both ears. When asked if he wanted to make a statement as to how his injury occurred, the only remark recorded is "Use of force." Inmate SULLIVAN's injuries were cleaned with hydrogen peroxide, and he required no further treatment. Based upon correctional experience, the DHO was convinced the minor injuries sustained by inmate SULLIVAN were consistent with staff using force to place the inmate on the floor and regain control. Coupled with the Staff Representative's review of the video footage indicating he didn't observe staff twisting SULLIVAN's wrist, and the staff representative's testimony that SULLIVAN never reported the officer twisted his wrist, the DHO found no evidence to support inmate SULLIVAN's claims that he was assaulted by, beaten, or tortured by staff. The DHO confirmed inmate SULLIVAN did receive a copy of the incident report several days after the incident and once the FBI declined prosecution. The DHO determined inmate SULLIVAN was provided the copy a minimum of 24 hours prior to the final hearing and that the delivery delay did not hinder his due

*— She is not a doctor*

*Exhibit 8*

## DISCIPLINE HEARING OFFICER REPORT   CDFRM

BP-A0304
AUG 11

U.S. DEPARTMENT OF JUSTICE                    FEDERAL BUREAU OF PRISONS

*INMATE COPY*

*Grabby Sard vises shorted chest*

process. Although SULLIVAN claimed it was not physically possible for him to strike the reporting officer in the face with his elbow while handcuffed, the DHO determined it was possible based upon the height of both individuals, the position they were both in, and the flexibility exhibited by inmate SULLIVAN. Whether the strike landed on the officer's face as reported by the victim and the multiple staff who witnessed the incident, or in the chest as suggested by inmate SULLIVAN, the DHO was convinced inmate SULLIVAN did assault the reporting officer with his elbow.

The DHO relied upon the Staff Injury Assessment completed for the reporting officer which indicated both knees sustained contusion, swelling and tenderness. He also received minor abrasion to both thumbs, tenderness to his right hand at the 2nd joint, right shoulder tenderness, and swelling and tenderness to the left side of his face.

The DHO considered the repetitive nature of the prohibited act. Within the past eighteen (18) months, inmate SULLIVAN has committed multiple offenses of assaulting correctional personnel. Based upon this information, the DHO determined inmate SULLIVAN demonstrated a propensity to engage in prohibited assaultive behavior toward staff.

The DHO relied upon inmate SULLIVAN's statement at the DHO hearing in which he admitted to the charge.

Based upon the greater weight of the evidence, the DHO found inmate Cyrus SULLIVAN, Register Number 74918-065, committed the prohibited act of Assaulting Any Person, in violation of Code 224.

| VI. SANCTION OR ACTION TAKEN | | | |
|---|---|---|---|
| Offense Severity: | High | SGT Available: | Not eligible – PLRA |

20 days, Disallowed Good Conduct Time
4 months, Immediate Family Only Visiting privilege [Only: Mother, Father, Sister, Brother, Spouse, Children – to commence when any/all LP VISIT sanction(s) end]
4 months, MP3 Player restriction

### VII. REASON FOR SANCTION OR ACTION TAKEN

Any action on the part of any inmate to assault staff threatens the security of the institution and the safety of others. Staff responding to this incident also received injuries. The disallowance of good conduct time was imposed based on the severity of the offense, and the inmate's sentence commitment. Sanctions were imposed in an attempt to correct the inmate's future behavior.

### VIII. APPEAL RIGHTS: The inmate has been advised of the findings, specific evidence relied on, action and reasons for the action. The inmate has been advised of his right to appeal this action within 20 calendar days under the Administrative Remedy Procedure. A copy of this report has been given to the inmate.

| | Yes | X | No | | |
|---|---|---|---|---|---|

### IX. DISCIPLINE HEARING OFFICER

| Printed Name | Signature | Date |
|---|---|---|
| D. Elliott, Discipline Hearing Officer | | 10-05-2015 |
| Scanned and Emailed: | | 10/05/2015 |
| Delivered to Inmate: (via institutional mail) | DATE: 10/05/2015 | TIME: 3:16 p.m. |

*Page 4*

*Exhibit 8*

BP-A0304
AUG 11
U.S. DEPARTMENT OF JUSTICE

**DISCIPLINE HEARING OFFICER REPORT**   CDFRM

INMATE COPY

**FEDERAL BUREAU OF PRISONS**

---

*Note:  Delivery of this incident report was delayed due to the increased volume of hearings conducted during this period.  As a result, the final report was not completed within 15 working days.  This delay will not hinder the inmate's due process or right to appeal the DHO's decision.  At the final hearing, the inmate was advised of his right to appeal by submitting a BP-10.

---

Prescribed by P5270

Replaces BP-S304 (52) JAN 88

Page 8



May 23, 2016


Director, Federal Bureau of Prisons
320 First Street, NW
Washington, DC 20534


RE:  FREEDOM OF INFORMATION REQUEST


Dear Director:

I am requesting that you please send me copies of the video tape from incident report 2748458, DHO appeal 837454-R1, and administrative remedy 836848-F1.  The video is surveillance footage shot on F-Range in the Special Housing Unit (SHU) at USP Victorville at 12:40 p.m. on July 29, 2015.  This video was last known to be in the possession of Lt. Gabby at USP Victorville.

In addition to the above noted video, I am also requesting also another video that exists.  On April 7, 2016, SIA Alvarez came to meet with me and said that he had another video featuring my walk to my medical exam in which it took me about six minutes to walk to medical in excruciating pain due to bone tight restraints.  Since my release from the prison on 5/9/16 I've spoken to SI Alvarez and he said that Lt. Gabby had burnt him a copy of the F-Range video and kept the original himself.  SIA Alverez can be reached in his office located at FCI II at 760-530-5700 ext. 5869.

Enclosed is the Freedom of Information/Privacy Act Record Release Form and a Certification of Identity form completed by me, Cyrus Andrew Sullivan, BOP ID 74918-065.

Please expedite for this request so that any further action on my part can timely be handled as well. I thank you for your immediate assistance.


Thank you.



Cyrus A. Sullivan
1236 SE 46th Ave.
Portland, OR 97215

Enclo:  Forms-Freedom of Information Request
            Certificate of Identity

*Exhibit 10*

## FREEDOM OF INFORMATION / PRIVACY ACT RECORD REQUEST FORM

Form Approved
OMB No. 3206-0259

**Instructions:** Use of this form is optional. You may use any written format for a Freedom of Information (FOIA) or Privacy Act (PA) Request as long as it contains a description of the information you are requesting and sufficient personally identifying data when required. Failure to provide the required information may result in no action being taken on the request. Submit completed forms via fax, mail, or e-mail as scanned attachments. If submitting via e-mail, you should ensure that the security of your e-mail system is adequate for transmitting sensitive information before choosing to transmit your request, which contains your personally identifiable information. _Mail:_ OPM-Federal Investigative Services; ATTN: FOI/PA office, 1137 Branchton Road, P.O. Box 618, Boyers, PA 16018. _Fax:_ (724) 794-4590. _e-Mail:_ FISFOIPARequests@opm.gov.

### 1. Type of Request - (This section must be completed.)

**PA/FOIA Request:**

☉ I request my own records. (Requester must complete sections 2, 3, 4, 5, and 7.)

**FOIA Request:**

○ I am making a request for records about someone or something other than myself.
(Requester must complete sections 2, 3, 7, and 8.)

**PA Amendment Request:**

○ I wish to amend my own records. In accordance with 5 C.F.R. § 297.301, the burden of proof rests with the record subject to illustrate how his/her record is not accurate, timely, relevant, or complete. Requesters should attach additional material to this form.
(Requester must complete sections 2, 4, 5, and 7.)

### 2. Requester Information - (This section must be completed.)

Full Name: Cyrus Andrew Sullivan

Street Address: 1236 SE 46th

City: Portland    State: OR    Zip Code: 97215

Country: USA

**Preferred Delivery Method:**   ○ Secure e-Mail*   e-Mail Address: _____

☉ Hardcopy Mail

**Optional:** Telephone Number: 503-232-3080

*A secure e-mail ensures that the information being sent to you is encrypted and therefore cannot be intercepted and read. Many widely used e-mail providers accept this type of file. If your e-mail provider prohibits secure e-mails you will be notified to register with the OPM server. This registration process will authenticate your identity and will allow the e-mail to be delivered directly to you.

### 3. Records Requested (Select One)

○ Standard Form Only (SF86, 85P, or 85)    ○ Most Recent Investigation, including Standard Form

○ All Investigations and Standard Forms    ☉ Other (Specify in the box below) - Attach a separate page if you need more space than provided below.

Video in possession of Lt. Gabby and SIA Alvarez at USP/FCC Victorville of 7/29/2015 incident at 12:40 PM on F-Range in SHU. Subject of incident report 2748488 and administrative remedy request 836848-F1.

*Exhibit 15*

Form Approved
OMB No. 3206-0259

## 4. Requester's Identifying Information - (Complete this section only if you are making a request for records about yourself.)

Social Security Number: ~~[redacted]~~    Date of Birth: (MM/DD/YYYY) `06/26/1983`

City of Birth: `Longview`    State of Birth: `Washington`

Country of Birth: `USA`

## 5. Identity Source Documents - (Copies of two identity source documents must be submitted along with this form.)

Examples of acceptable identity source documents are provided on the OPM-Federal Investigative Services FOIA/PA web page:
https://www.opm.gov/investigations/freedom-of-information-and-privacy-act-requests/

● Copies of two identity source documents are attached.

## 6. Optional: Authorization to Release Information to a Third Party.

By completing this section, you authorize information relating to you to be released to another person, such as a family member or legal counsel. Please note, if you choose to have your records sent to a third party, you will not be furnished a duplicate copy. *Pursuant to 5 U.S.C. § 552a(b), I authorize the United States Office of Personnel Management's, Federal Investigative Services to release my records (defined above) to:*

Full Name:

Mailing Address:

## 7. Verification of Requester's Identity - (Complete this section only if you are making a request for records about yourself.)

*I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and I am the person named in Section 2. I understand that any falsification of this statement is punishable under the provisions of 18 U.S.C. § 1001 by a fine of not more than $10,000, or by imprisonment for not more than five years or both, and that requesting or obtaining any record(s) under false pretenses is punishable under the provisions of 5 U.S.C. § 552a(i)(3) by a fine of not more than $5,000.*

Handwritten Signature: _____    Date: `5/21/2016`

## 8. Complete this section only if you are requesting records about someone or something other than yourself.

In the box below, you may wish to provide information about yourself and the purpose of your request to help us determine your fee category. While FOIA does not require a requester to state the purpose of a request, fees may be reduced based on the nature of the requester or purpose of the request. Fees for searching, copying, and processing records in this category may be levied in accordance with OPM's regulations at 5 C.F.R. § 294.109. If you are asking for a waiver or reduction of fees, you can also use this box to provide an explanation. Attach a separate page if you need more space to provide more below.

`I am requesting this information for a tort claim and lawsuit for assault on my person by individuals in the video tape.`

● I agree to pay all applicable fees.    ○ I agree to pay up to a specific amount for fees.    Specify the amount

● I request a waiver or reduction of fees because I am (check all options listed below that apply):

○ Affiliated with an educational or noncommercial scientific institution and this request is not for commercial use.

○ A representative of the news media and this request is part of a news dissemination function and not for commercial use.

● Requesting the information in order to contribute significantly to the public understanding of the operations or activities of the government and I do not primarily have a commercial interest in the information.

*Exhibit 10*

# FREEDOM OF INFORMATION / PRIVACY ACT RECORD REQUEST FORM
## Privacy Routine Use and Disclosure Information

Form Approved
OMB No. 3206-0259

**Privacy Act Statement.** Information provided by a requester will be used to locate and provide the requester responsive records pursuant to the Freedom of Information Act (5 U.S.C. § 552), and/or the Privacy Act of 1974 (5 U.S.C. § 552a). Authority to collect this information is contained in 5 U.S.C. § 552, 5 U.S.C. § 552a, 5 C.F.R. § 297.201(b). The purpose of the collection is to enable the United States Office of Personnel Management (OPM) Federal Investigative Services to locate applicable records and to respond to requests made under the Freedom of Information Act and the Privacy Act of 1974. Failure to provide the required information may result in no action being taken on the request.

**Routine Uses.** The information collected on this form will primarily be used to comply with requests for information under Title 5 U.S. Code 552 and 552a. Routine uses of the records include:

To disclose information to the Office of Management and Budget at any stage in the legislative coordination and clearance process in connection with private relief legislation as set forth in OMB Circular No. A-19.

To disclose information to an agency, subject to law, rule, or regulation enforced by OPM having been found in violation of such law, rule, or regulation, in order to achieve compliance with OPM instructions.

To disclose information to Federal agencies in order to obtain advice and recommendations concerning matters on which the agency has specialized experience or particular competence, for use by OPM in making required determinations under the Freedom of Information Act or the Privacy Act of 1974.

To disclose information to any source from which additional information is requested (to the extent necessary to identify the individual, inform the source of the purpose of the request, and to identify the type of information requested), where necessary to obtain information relevant to an OPM decision concerning a Privacy or Freedom of Information Act request.

To disclose to the Federal agency involved, an OPM decision on an appeal from an initial denial of a request involving OPM-controlled records.

To disclose pertinent information to the appropriate Federal, State, or local agency responsible for investigating, prosecuting, enforcing, or implementing a statute, rule, regulation, or order, where OPM becomes aware of an indication of a violation or potential violation of civil or criminal law or regulation.

To provide information to a congressional office from the record of an individual in response to an inquiry from that congressional office made at the request of that individual.

To disclose information to another Federal agency, to a court, or a party in litigation before a court or in an administrative proceeding being conducted by a Federal agency, when the Government is a party to the judicial or administrative proceeding. In those cases where the Government is not a party to the proceeding, records may be disclosed if a subpoena has been signed by a judge.

To disclose information to the National Archives and Records Administration for use in records management inspections.

By OPM in the production of summary descriptive statistics and analytical studies in support of the function for which the records are collected and maintained, or for related workforce studies. While published studies do not contain individual identifiers, in some instances the selection of elements of data included in the study may be structured in such a way as to make the data individually identifiable by inference.

To disclose information to the Department of Justice, or in a proceeding before a court, adjudicative body, or other administrative body before which OPM is authorized to appear, when: (1) OPM, or any component thereof; or (2) Any employee of OPM in his or her official capacity; or (3) Any employee of OPM in his or her individual capacity where the Department of Justice or OPM has agreed to represent the employee; or (4) The United States, when OPM determines that litigation is likely to affect OPM or any of its components; is a party to litigation or has an interest in such litigation, and the use of such records by the Department of Justice or OPM is deemed by OPM to be relevant and necessary to the litigation provided, however, that the disclosure is compatible with the purpose for which records were collected.

To disclose information to officials of the Merit Systems Protection Board or the Office of the Special Counsel, when requested in connection with appeals, special studies of the civil service and other merit systems, review of OPM rules and regulations, investigations of alleged or possible prohibited personnel practices, and such other functions, e.g., as promulgated in 5 U.S.C. 1205 and 1206, or as may be authorized by law.

To disclose information to the Equal Employment Opportunity Commission when requested in connection with investigations into alleged or possible discrimination practices in the Federal sector, compliance by Federal agencies with the Uniform Guidelines on Employee Selection Procedures or other functions vested in the Commission and to otherwise ensure compliance with the provisions of 5 U.S.C. 7201.

To disclose information to the Federal Labor Relations Authority or its General Counsel when requested in connection with investigations of allegations of unfair labor practices or matters before the Federal Service Impasses Panel.

**Information Regarding Disclosure of your Social Security Number (SSN) under Public Law 93-579, Section 7 (b).** Solicitation of SSNs by OPM is authorized under the provisions of Executive Order 9397, dated November 22, 1943. Providing your social security number is voluntary. You are asked to provide your social security number only to facilitate the identification of records relating to you. Without your social security number, OPM may be unable to locate records pertaining to you. The use of SSNs is necessary because of the large number of Federal employees, contractors, civilians and military personnel who have identical names and/or birth date and whose identities can only be distinguished by their SSNs.

**Public Burden Statement.** Public burden reporting for this collection of information is estimated to vary from 5 to 15 minutes with an average of 5 minutes per response, including time for reviewing instructions, searching existing data sources, gathering the data needed, and completing and reviewing the collection of information. Send comments regarding the accuracy of this burden estimation and any suggestions for reducing the burden to: U.S. Office of Personnel Management, Federal Investigative Services, Attn: OBM Number (3206-0259), 1900 E. Street NW, Washington, DC 20415-7900.

Exhibit 11



**U.S. Department of Justice**
**Federal Bureau of Prisons**

_Western Regional Office_
_7338 Shoreline Drive_
_Stockton, CA  95219_

June 22, 2016

Cyrus Sullivan
1236 SW 46th Ave.
Portland, OR  97215

Dear Requester:

The Federal Bureau of Prisons (BOP) received your Freedom of Information Act/Privacy Act (FOIA/PA) request. Your request has been assigned a number and forwarded to the processing office noted below. Please make a note of the request number and processing office as you will need to include it in any correspondence or inquiry regarding your request. You requested copies of a video tape from July 29, 2015 and April 7, 2016 (See Request for my Info).

FOIA/PA Request Number:     2016-05509
Processing Office:              WXR

The time needed to complete our processing of your request depends on the complexity of our records search and the volume and complexity of any records located. Each request is assigned to one of three tracks: simple, complex, or expedited. Due to the large number of FOIA/PA requests received by BOP and the limited resources available to process such requests, BOP handles each request on a first-in, first-out basis in relation to other requests in the same track. Your request was assigned to the complex track and placed in chronological order based on the date of receipt.

We determined exceptional circumstances exist as the documents responsive to your request must be searched for and collected from a field office, and/or the documents responsive to your request are expected to be voluminous and will require significant time to review, and/or your request requires consultation with at least one other agency with a substantial interest in your request. Because of these unusual circumstances, we are extending the time limit to respond to your request beyond the ten additional days provided by the statute. Processing complex requests may take up to nine months. Pursuant to 28 C.F.R. § 16.5(b) and (c), you may narrow or modify your request in an effort to reduce the processing time.

Pursuant to 28 C.F.R. § 16.10, in certain circumstances we are required to charge fees for time spent searching for or duplicating responsive documents. If we anticipate your fees will be in excess of $25.00 or the amount you have indicated you are willing to pay, we will notify you of the estimated amount.  At that time, you will have the option to

Page 1

Exhibit H

reformulate your request to reduce the fees. If you requested a fee waiver, we will make a decision whether to grant your request after we determine whether fees will be assessed for this request.

If you have questions regarding the status of your request or anything discussed in this letter, you may contact the WXR at 209-956-9700 or the BOP FOIA Public Liaison, Mr. C. Darnell Stroble at (202) 616-7750 or BOP FOIA Section, 320 First Street, NW, Room 936, Washington, D.C. 20534. You can also check the status of your request on line at http://www.bop.gov/PublicInfo/execute/foia.

Sincerely,

WXR

Page 2

Exhibit 12



**U.S. Department of Justice**
**Federal Bureau of Prisons**

_____

*Western Regional Office*
*7338 Shoreline Drive*
*Stockton, CA 95219*

October 4, 2016

Cyrus Sullivan
1236 SW 46th Ave.
Portland, OR 97215
Request Number: 2016-05509

Dear Requester:

This is in response to the above referenced Freedom of Information Act (FOIA) request. Specifically, you requested copies of a video tape from July 29, 2015 and April 7, 2016.

Your request for a copy these videos is being withheld pursuant to the following provisions:

**5 U.S.C. § 552(b)(6)** concerns material the release of which would constitute a clearly unwarranted invasion of the personal privacy of third parties.

**5 U.S.C. § 552(b)(7)(C)** concerns records or information compiled for law enforcement purposes the release of which could reasonably be expected to constitute an unwarranted invasion of the personal privacy of third parties.

**5 U.S.C. § 552(b)(7)(E)** concerns records or information compiled for law enforcement purposes the release of which would disclose techniques and procedures for law enforcement investigations or prosecutions.

**5 U.S.C. § 552(b)(7)(F)** concerns records or information compiled for law enforcement purposes the release of which could reasonably be expected to endanger the life or personal safety of an individual.

If you have any questions, you have the right to seek assistance from the undersigned or BOP's FOIA Public Liaison, Mr. C. Darnell Stroble (202) 616-7750).

If you are not satisfied with my response to this request, you may administratively appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, Suite 11050, 1425 New York Avenue, NW, Washington, DC 20530-0001, or you may submit an appeal through OIP's FOIAonline portal by creating an account at: https://foiaonline.regulations.gov/foia/action/public/home. Your appeal must be postmarked or electronically transmitted within 90 days of the date of my response to your request. If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal." Additionally, you have the right to seek dispute resolution services from BOP's FOIA Public Liaison, Mr. C. Darnell Stroble ((202) 616-7750) or the Office of Government Information

Page 1

Exhibit 12

Services (OGIS). OGIS offers mediation services to resolve disputes between FOIA requesters and Federal agencies as a non-exclusive alternative to litigation. Using OGIS services does not affect your right to pursue litigation. The contact information for OGIS is as follows: Office of Government Information, Services, National Archives and Records Administration, Room 2510, 8601 Adelphi Road, College Park, Maryland 20740-6001; e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

Sincerely,

Dennis M. Wong
Regional Counsel



October 18, 2016


Director, Office of Information Policy
United States Department of Justice
Suite 11050
1425 New York Avenue, NW
Washington, DC 20530-0001


RE: FREEDOM OF INFORMATION ACT APPEAL


Dear Director:

This is an appeal of a decision by the Federal Bureau of Prisons ("BOP") to withhold information requested under the Freedom of Information Act ("FOIA"). On October 4, 2016 Dennis M. Wong, Regional Counsel, Western Region, sent a response to FOIA request 2016-05509 stating that my request for two surveillance tapes is being withheld pursuant to several parts of 5 U.S.C. 552(b). Mr. Wong failed to articulate any justification for withholding the tapes beyond reciting the statute word for word and I cannot think of any possible argument that would give merit to his decision.

The tapes in question include one surveillance tape and one tape shot using a handheld camera in the Special Housing Unit ("SHU") at USP Victorville on July 29, 2015. The surveillance tape should show Senior Officer Specialist S. Luna repeatedly punching me in the head while I was lying prone on the ground and in hand cuffs. The handheld camera should show me being forced to walk for about six minutes in bone tight shackles and my medical exam in which I recounted for the camera the beating I suffered on f-range and the torture I suffered in Observation Room 1 that included being punched in the face by Lt. S. Williams.

5 U.S.C. 552(b)(6) and (7)(C) concern material that would constitute an unwarranted invasion of privacy to third parties. I cannot think of anyone whose privacy would be invaded by the release of these tapes except for me.

5 U.S.C. 552(b)(7)(E) "concerns records or information compiled for law enforcement purposes the release of which would disclose techniques and procedures for law enforcement investigations or prosecution." On a purely technical level these tapes do not show any investigation and there have been no prosecutions. The only techniques used by law enforcement that the tapes would disclose are either common knowledge or illegal. For instance it is common knowledge that uncooperative inmates may be taken to the ground by force and restrained using shackles. Punching restrained inmates that were uncooperative, but became cooperative and are now lying on the ground under a pile of officers is assault. Forcing an inmate to walk wearing shackles so tight that they turned what is normally a 30 second walk into an excruciating 6 minute ordeal is torture. Assault and torture are



illegal techniques the disclosure or which could never jeopardize any legitimate future investigation or prosecution.

5 U.S.C. 552(b)(7)(F) "concerns records or information compiled for law enforcement purposes the release of which could reasonably be expected to endanger the life or personal safety of an individual." I cannot think of any way that giving me videos of myself being assaulted, tortured, and treated by medical would endanger anyone's life. Even if I were to make the tape available to the public I don't see how it would disclose any private information about staff members that I believe use their real names at work. Perhaps the BOP could release a tape with blurred faces to me and keep the original for the time being. The only other possible safety concern I could think of would be public backlash similar to that that followed the infamous Rodney King trial in 1991. I don't see any way that anyone in the public seeing these tapes would start rioting. They might voice negative opinions about the officers involved, but that would be it.

Please order the BOP to turn over the original tapes or copies with blurred faces as long as they keep the original unedited tapes on file for future legal proceedings. By withholding the tapes the BOP is obstructing my ability to consult with legal counsel regarding this matter. Thank you.

Sincerely,

10/18/16

Cyrus A. Sullivan
1236 SE 46th Ave.
Portland, OR 97215

Enclo:  Copies of Original Letter, Forms-Freedom of Information Request
         Certificate of Identity, and BOP response.

Page 2

 *Exhibit 14*



**U.S. Department of Justice**
Office of Information Policy
*Suite 11050*
*1425 New York Avenue, NW*
*Washington, DC  20530-0001*

*Telephone: (202) 514-3642*

**December 1, 2016**

Mr. Cyrus A. Sullivan          Re:     Appeal No. DOJ-AP-2017-000434
1236 SE 46th Avenue                    Request No. 2016-05509
Portland, OR  97215                    DRC:ADF

**VIA:  U.S. Mail**

Dear Mr. Sullivan:

You appealed from the action of the Federal Bureau of Prisons (BOP) on your Freedom of Information Act request for access to video tapes from July 29, 2015 and April 7, 2016.

After carefully considering your appeal, I am affirming BOP's action on your request. In order to provide you with the greatest possible access to responsive records, your request was reviewed under both the Privacy Act of 1974 and the FOIA. I have determined that the records responsive to your request are exempt from the access provision of the Privacy Act. See 5 U.S.C. § 552a(j)(2); see also 28 C.F.R. § 16.97 (2016). For this reason, I have reviewed your appeal under the FOIA.

The FOIA provides for disclosure of many agency records. At the same time, Congress included in the FOIA nine exemptions from disclosure that provide protection for important interests such as personal privacy, privileged communications, and certain law enforcement activities. BOP properly withheld this information in full because it is protected from disclosure under the FOIA pursuant to:

5 U.S.C. § 552(b)(6), which concerns material the release of which would constitute a clearly unwarranted invasion of the personal privacy of third parties;

5 U.S.C. § 552(b)(7)(C), which concerns records or information compiled for law enforcement purposes the release of which could reasonably be expected to constitute an unwarranted invasion of the personal privacy of third parties;

5 U.S.C. § 552(b)(7)(E), which concerns records or information compiled for law enforcement purposes the release of which would disclose techniques and procedures for law enforcement investigations or prosecutions; and

5 U.S.C. § 552(b)(7)(F), which concerns records or information compiled for law enforcement purposes the release of which could reasonably be expected to endanger the life or personal safety of an individual.



- 2 -

Please be advised that for each of these exemptions, it is reasonably foreseeable that disclosure of the information withheld would harm the interests protected by these exemptions.

Please be advised that this Office's decision was made only after a full review of this matter. Your appeal was assigned to an attorney with this Office who thoroughly reviewed and analyzed your appeal, your underlying request, and the action of BOP in response to your request. If you have any questions regarding the action this Office has taken on your appeal, you may contact this Office's FOIA Public Liaison for your appeal. Specifically, you may speak with the undersigned agency official by calling (202) 514-3642.

If you are dissatisfied with my action on your appeal, the FOIA permits you to file a lawsuit in federal district court in accordance with 5 U.S.C. § 552(a)(4)(B).

For your information, the Office of Government Information Services (OGIS) offers mediation services to resolve disputes between FOIA requesters and Federal agencies as a non-exclusive alternative to litigation. Using OGIS services does not affect your right to pursue litigation. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, Room 2510, 8601 Adelphi Road, College Park, Maryland 20740-6001; e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

Sincerely,

X

Sean R. O'Neill
Chief, Administrative Appeals Staff

Page 7

Exhibit 15

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit to Appropriate Federal Agency: | 2. Name, address of claimant, and claimant's personal representative if any. (See instructions on reverse.) Number, Street, City, State and Zip code. |
|---|---|
| Federal Bureau of Prisons<br>Western Regional Office<br>7338 Shoreline Drive<br>Stockton, Ca 95219 | Cyrus Andrew Sullivan<br>1236 SE 46th Ave<br>Portland, Or 97215 |

| 3. TYPE OF EMPLOYMENT<br>☐ MILITARY  ☒ CIVILIAN | 4. DATE OF BIRTH<br>6/26/1983 | 5. MARITAL STATUS<br>single | 6. DATE AND DAY OF ACCIDENT<br>July 29, 2015 | 7. TIME (A.M. OR P.M.)<br>12:40 PM |
|---|---|---|---|---|

8. BASIS OF CLAIM (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary).

Assault and torture by correctional officers at USP Victorville known to me as SOS S. Luna and Lt. S. Williams. This incident has been well documented and all relevant pages in my possession are being attached to this form. To sum it up Luna punched me in the head repeatedly while I was lying prone on the ground, in handcuffs, and completely helpless. A cut opened up on my head from which I bled profusely. Then when Williams came on the range (SHU F-Range) he encouraged their behavior before taking me to a "observation room" so that I could be further beaten and tortured off camera.

| 9. | PROPERTY DAMAGE |
|---|---|

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION OF WHERE THE PROPERTY MAY BE INSPECTED. (See instructions on reverse side).

Permanent physical injury in the form of a scar on my head above my face. Plus psychological trauma for emotional pain and suffering.

| 10. | PERSONAL INJURY/WRONGFUL DEATH |
|---|---|

STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.

There were several injuries. The longest lasting of which being the scar on my head that I look at every time I look in the mirror. I also suffered nerve damage in my left hand that has since healed, what felt like a broken toe for several weeks, and a re-aggravated shoulder injury that caused me pain for weeks.

| 11. | WITNESSES | |
|---|---|---|
| NAME | ADDRESS (Number, Street, City, State, and Zip Code) | |
| | | |

| 12. (See instructions on reverse). | AMOUNT OF CLAIM (in dollars) | | |
|---|---|---|---|
| 12a. PROPERTY DAMAGE<br>$100 for my glasses | 12b. PERSONAL INJURY<br>$4,000,000 | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights).<br>$4,000,100 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side). | 13b. PHONE NUMBER OF PERSON SIGNING FORM<br>503-250-4408 | 14. DATE OF SIGNATURE<br>12/27/2016 |
|---|---|---|

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729). | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

| Authorized for Local Reproduction<br>Previous Edition is not Usable<br>95-109 | NSN 7540-00-634-4046 | STANDARD FORM 95 (REV. 2/2007)<br>PRESCRIBED BY DEPT. OF JUSTICE<br>28 CFR 14.2 |
|---|---|---|

Page 1

Exhibit 15

---

### INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of the vehicle or property.

15. Do you carry accident insurance?  ☐ Yes   If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number.  ☒ No

16. Have you filed a claim with your insurance carrier in this instance, and if so, is it full coverage or deductible?   ☐ Yes  ☒ No   | 17. If deductible, state amount.

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim? (It is necessary that you ascertain these facts).

19. Do you carry public liability and property damage insurance?   ☐ Yes   If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code).   ☒ No

---

### INSTRUCTIONS

**Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident.  If the incident involves more than one claimant, each claimant should submit a separate claim form.**

#### Complete all items - insert the word NONE where applicable.

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY DAMAGES IN A SUM CERTAIN FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN TWO YEARS AFTER THE CLAIM ACCRUES.

**Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.**

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations. If more than one agency is involved, please state each agency.

The claim may be filled by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item number 12 of this form.

The amount claimed should be substantiated by competent evidence as follows:

*(a)* In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of the injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

*(b)* In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

*(c)* In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

*(d)* Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.

---

### PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
  A. *Authority:* The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. *Principal Purpose:* The information requested is to be used in evaluating claims.
C. *Routine Use:* See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D. *Effect of Failure to Respond:* Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid."

---

### PAPERWORK REDUCTION ACT NOTICE

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501. Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, DC  20530 or to the Office of Management and Budget. Do not mail completed form(s) to these addresses.

STANDARD FORM 95 REV. (2/2007) BACK

*Exhibit 16*

# SICK CALL REQUEST

Name: _Cyrus Snowen_  Reg #: _74918-065_

Date: _11/13/15_  Unit / Cell: _4A/228_

Request to see (SELECT ONE)  _X_ Medical  ____ Dental

Specific issue: _Optometry – Glasses broken, need new_
_ones and broken ones adjusted_

Choose a number between 0 to 10 that best describes your pain.

| | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| English: | No Pain | | Mild | | Moderate | | Severe | | Very Severe | | Excruciating |
| Spanish: | Sin Dolor | | Leve | | Moderado | | Severo | | Muy Severo | | Intolerable |

## DO NOT WRITE BELOW THIS LINE

____ You will be evaluated today by your Healthcare Provider / Dental.  You are to wait
in the waiting room until called.

✓ You have been scheduled for an appointment with your Healthcare Provider /
Dental.  You will be placed on the callout to be evaluated.  (Medical assistant)

____ You have been referred to the commissary for the following medications -
Name: _____  Days: _____

NOV13  7:15AM

Triage Personnel: _B. Wolanth PAC_  Date: _____

Administrative Remedy No. 837454-A1
Part B - Response


You appeal the August 12, 2015, hearing decision of the Discipline
Hearing Officer (DHO) regarding incident report #2736289 in which
you were found to have committed the prohibited act of Assaulting
without Serious Injury (Code 224).  You make no specific request for
relief.

Our review of your disciplinary proceedings indicates compliance
with Program Statement 5270.09, Inmate Discipline Program.  The
DHO's decision was based upon the evidence detailed in Section V of
the DHO report.  We find the determination of the DHO is reasonable
and supported by the evidence.  Your Due Process rights were upheld
during the discipline process.  The sanctions imposed were
commensurate to the severity level of the offense committed and in
compliance with policy.

Accordingly, your appeal is denied.




_____                    _____
Date                                        Ian Connors, Administrator
                                            National Inmate Appeals

Cyrus Sullivan
9074C
Columbia County Jail
901 Port Ave,
St. Helens, OR 97051

[Official Mail]

INMATE

United States District Cou
Office of The Clerk
Central District of California
Eastern Division
3470 Twelfth St.
Riverside, CA 92501-366

RECEIVED
CLERK, U.S. DISTRICT COURT

MAY 10 2018

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION    BY DEPUTY

JJ58119